254 N.J. Super. 62 (1992)
603 A.2d 71
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CHRISTOPHER ALLEN AND KENNETH McEACHIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 29, 1991.
Decided February 14, 1992.
*63 Before Judges ANTELL, LONG and BAIME.
Paul T. Keonig, Jr., Mercer County Prosecutor, attorney for appellant (Alvin McGowen, Assistant Prosecutor, of counsel and on the letter brief).
Wilfredo Caraballo, Public Defender, attorney for respondent (Frank E. Farrell, Assistant Deputy Public Defender, attorney for Christopher Allen, on the brief; Francisco Gonzalez, Assistant Public Defender, attorney for Kenneth McEachin).
The opinion of the court was delivered by LONG, J.A.D.
By leave granted, the State challenges an order of the trial judge which suppressed evidence obtained during a consent search of the trunk of an automobile, which led to the indictment of defendants Christopher Allen and Kenneth McEachin.
The case arose at approximately 1:40 a.m. on September 20, 1990, when New Jersey State Troopers Frazier and Lazarie stopped a car on the New Jersey Turnpike for exceeding the posted speed limit. The automobile, bearing Virginia license *64 plates, was properly registered to Tawanna Day, a back seat passenger. Two other occupants were in the car  the driver (defendant Christopher Allen) who said his name was Joe Lewis but who had no identification and the front seat passenger, defendant Kenneth McEachin who had proper credentials. The driver, whom Day identified as her boyfriend, "Chris," told the officers he had lost his driver's license in New York City. McEachin identified the driver as his cousin "Joe" whose last name he did not know. According to Trooper Frazier, the driver and passenger gave conflicting versions of how long they had been in New York prior to this trip. A motor vehicle check showed that Joe Lewis was five feet nine inches tall while the driver was six feet five inches tall.
On the basis of all of this information, Trooper Frazier requested Ms. Day to step out of the car and asked if she would consent to the search of the automobile. She was given a consent to search form which was read and explained by Trooper Frazier. After he advised Ms. Day of her right to refuse, she signed it. Trooper Frazier opened the trunk and found a maroon overnight bag. He testified that he asked who owned it and none of the three responded. According to the trooper, after the bag was unzipped and during the search, defendant Allen stated he had found it in New York. Inside was what turned out to be 12.74 grams of cocaine along with a greenish brown powder, glass vials of brown liquid, quinine, and tin foil containing a rock like substance. Allen testified, contrary to the trooper, that he claimed ownership of the bag before the search began.
A black overnight bag was also in the trunk. McEachin acknowledged to the trooper that this bag belonged to him. Without further inquiry, the trooper proceeded to search this bag and retrieved further suspected C.D.S. Defendants Allen and McEachin were then arrested and indicted. This motion followed.
*65 The trial judge granted the motion on one ground  that the circumstance of the case did not justify the request for a consent to search from Ms. Day. More particularly, he stated:
What we have in this case factually is that, as the trooper has testified, he stopped a vehicle on the turnpike exceeding the speed limit. I have no problem with that. I think he further indicated that he asked for a driver's license and registration, and he was not given the driver's license or registration by the driver. He asked for the driver's name and he was given a false name. He asked the passenger, who was another male in the front seat, as to the identity of the driver, and was told that this was his cousin, somebody named Joe, whose last name he didn't know. However, the passenger did properly identify himself. In the back seat we had the owner of the car, and the trooper quite correctly, as was remarked by counsel, that he acted in a way that was the very model of how a trooper should be acting. Courteously and appropriately, he asked for the registration, and it proved out to be the registration of the owner of this particular vehicle. So there was no question about this young lady owning the vehicle.
Then what happened is the trooper asked the parties to apparently step outside, as I understand it, and he asked the owner to come into the back of the  actually, to go to the rear of the car and step into the trooper's car. The trooper then asked her if she would consent to a search. I think that, even though in the confines of the State Police car, she was told she had a right to refuse and I am convinced also that the trooper told her that she could stop the search at any time and she then signed the consent.
The matter that is causing the court some difficulty in this case is, in effect, the initiation of the process of asking for a consent to search. It seems to the court in this case, that there was fibbing, there was a false name given, there was speeding, and there was a Virginia license plate involved. It seems to the court that the totality of the circumstances of this case does not rise to the dignity of where it would precipitate the steps that were taken; namely, to request to have  and I am just judging on this particular case. I am confining it to what we have here where the owner is asked to step into the State Police vehicle and is then asked for a consent.
I find that I don't think that the circumstances in this case warranted or precipitated or had any articulable reason for taking this step other than, I think, a bare suspicion. The fact that the trooper's suspicion was justified because later on it proved that there was a controlled dangerous substance involved here, I don't think that mitigates or covers or provides a basis for requesting a search.
I think we have argued this back and forth, and it is with some, you know, reluctance because I don't have any precedent that considered this particular question that the court is making this ruling on, but, again, I think everybody here is concerned with the rights of the Fourth Amendment which are granted all of our citizens in this country and they must be assiduously protected. I think that it would be inappropriate, as I see it, to permit an erosion, based on the totality of the circumstances here, of that right which is guaranteed under *66 our Fourth Amendment. I think what it would result in is, I think, a significant loss of individual privacy, and I think it would have a detrimental effect as far as the exercise of searches is concerned and I don't think it would be beneficial to the fabric of our society.
I am therefore finding, in effect, that there was no basis for the request for the consent, no articulable reason and the evidence is suppressed.
The State appeals. We reverse and remand.
We begin our analysis with the observation that the State concedes that, at least, as to the trunk and the maroon bag, this is solely a consent case. It is not suggested that absent Day's consent, there was any basis for the trooper to search the trunk or the containers therein. Thus, the viability of Day's consent is our first inquiry. The trial judge held that police cannot request a consent to search without at least a reasonable or articulable suspicion to believe that there is contraband or criminal evidence where the police propose to look. Although we recognize the existence of an out-of-state case standing for that proposition, e.g. Garrett v. Goodwin, 569 F. Supp. 106, 121 (E.D.Ark., W.D. 1982), our research reveals that this is an isolated case which has been rejected wherever the issue has been considered. See McIntosh v. State, 296 Ark. 167, 753 S.W.2d 273, 275 (1988), cert. denied, 489 U.S. 1065, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989); Johnson v. State, 27 Ark. App. 54, 766 S.W.2d 25, 27 (1989); United States v. McCray, 692 F. Supp. 1019, 1021-22 (E.D.Ark. 1988); see also United States v. Pitchford, 699 F. Supp. 260, 265 (D.Wyo. 1988) (though the issue was not specifically addressed, the court approved a request to search supported by no suspicious circumstances). Indeed, in his treatise on the Fourth Amendment, Professor LaFave cites the McIntosh case as support for the proposition that "there is no requirement of reasonable suspicion as a prerequisite to seeking consent." 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment, Sec. 8.1 n. 5.1 (Supp. 1991). That is also the law of New Jersey. Thus, the reasoning of the trial judge which led to the grant of the motion to suppress cannot be countenanced.
*67 What is left to us is to determine whether the consent by Day was sufficient to justify the search of either or both of the bags which held the contraband. As we recently said in State v. Terry Lee, 245 N.J. Super. 441, 446-47, 586 A.2d 256 (App.Div. 1991):
To rely on a third-party consent to search a container, the State must prove that the consent was obtained from a person with a sufficient relationship to the container. State v. Douglas, 204 N.J. Super. 265, 276 [498 A.2d 364] (App.Div. 1985), certif. denied. 102 N.J. 378 [508 A.2d 242] (1985) (defendant's mother could consent to a search of his room). The State must show that the third-party possessed a "common authority" over the container. Unless the State can show an implied agency or a relationship to the defendant, the State must show that the person consenting had rights of possession over the container equal or superior to the defendant's. 204 N.J. Super. at 277 [498 A.2d 364]; State v. Miller, 159 N.J. Super. 552, 557-558 [388 A.2d 993] (App.Div. 1978), certif. denied, 78 N.J. 329 [395 A.2d 198] (1978).
A third person's consent "cannot validate a warrantless search when the circumstances provide no basis for a reasonable belief that shared or exclusive authority to permit inspection exists in the third person...." United States v. Block, 590 F.2d 535, 540 (4th Cir.1978). A consent to search especially lacks validity where the third person actually disclaims any right of access. Ibid. Even where a third-party has authority to consent to a search of the premises, that authority does not extend to a container in which the third party denies ownership, because the police are left with "no misapprehension as to the limit of [the third party's] authority to consent." People v. Egan, 250 Cal. App.2d 433, 58 Cal. Rptr. 627 (Cal.Ct.App. 1967). In short, a third-person's consent to a search is not valid as to a container over which the third-person disclaims ownership. State v. Terry Lee, supra. That is exactly the situation here. While Day consented to the search, she denied ownership of the maroon suitcase. Thus, her consent cannot validate the search of that container.
The only other basis for the search is if the owner, by his conduct, objectively relinquishes his expectation of privacy in the object searched. State v. Hempele, 120 N.J. 182, 212-215, 576 A.2d 793 (1990); 1 LaFave, Search and Seizure, *68 supra, § 2.6(b) at 467. (2d ed. 1987). In Terry Lee, such objective relinquishment was found where the defendant affirmatively told the officer he did not know to whom the shaving kit belonged and when he failed to protest during the search. 245 N.J. Super. at 449-50, 586 A.2d 256. Here, there is conflicting testimony as to when Allen acknowledged ownership of the maroon bag. The officer said this took place after the search was underway; Allen said he claimed ownership of the bag before the search began. The trial judge made no finding on this pivotal issue. If Allen is correct, no relinquishment of his privacy interest could be shown and the search would be invalid. If, on the other hand, the search had begun prior to Allen's ownership acknowledgement, a relinquishment might well be shown, depending on how far the search had advanced prior to Allen's acknowledgement. (If the drugs were already uncovered, it would be too late to invalidate the search; and the search could proceed on the independent ground of what had been found; if not, the trooper would have been compelled by Allen's expression of ownership to cease further searching.) In short, this is a fact intensive inquiry requiring evaluation in the first instance by the judge who heard the case.
This is equally true of the search of the second bag. Its viability depends on what the troopers legitimately found in the first bag. Obviously, Day's consent was fatally flawed because of her denial of an ownership interest in the bag and because of McEachin's acknowledgement from the beginning that the bag was his. (This acknowledgement also precluded a finding that McEachin had relinquished his privacy interest in the bag). Thus, only by legitimizing the discovery of the cocaine in the maroon bag can the further search of the black bag be countenanced on the ground that the former gave rise to probable cause to believe that more drugs would be found in the latter. State v. Demeter, 124 N.J. 374, 590 A.2d 1179 (1991); see also State v. Davis, 104 N.J. 490, 517 A.2d 859 (1986).
*69 We thus reverse and remand the case to the trial judge for full fact-finding on the issues presented and for reconsideration of the motion to suppress in light of what we have said here.