257 N.J. Super. 549 (1992)
608 A.2d 986
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LUIS ABREU AND CHARLES A. SANCHEZ, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 13, 1992.
Decided July 1, 1992.
*550 Before Judges KING, DREIER and GRUCCIO.
Edward F. Borden, Jr., Camden County Prosecutor, attorney for appellant (Laurie A. Corson, Assistant Prosecutor, of counsel and on the letter brief).
Alan Rosenberg, attorney for respondent Luis Abreu.
Wilfredo Caraballo, Public Defender of New Jersey, attorney for respondent Charles A. Sanchez (Jorge E. Montoya, Designated Attorney, of counsel and on the letter brief).
*551 KING, P.J.A.D.
This is an appeal on leave, R. 2:2-3(b), to the State from the grant of a motion to suppress in a narcotics case. The case is close and rather unusual in context. We reverse the ruling on the suppression motion and remand for trial.
The case arose from a month-long FBI drug-courier profile surveillance of the two defendants. The defendants were the subjects of an extended investigation in which they were identified by the State Police as likely drug couriers because of their characteristic conduct. They were from Miami, Florida; travelled only by taxi; moved frequently from one hotel or motel to another, or from one room to another; paid for their rooms in cash; declined maid service in their rooms and used public telephones instead of their room telephones. One man operated as a "lookout." They frequently carried packages in and out of their rooms, staying for only a short period of time. The surveillance apparently had not yielded enough evidence to support an application for a search warrant, the State Police's ultimate objective.
On February 1, 1991 at 6 a.m. Trooper Cartagena was briefed by Sergeant Linden concerning the prior month-long surveillance and was given general descriptions of the defendants, Abreu and Sanchez. At about 10:30 a.m. on that day, Trooper Cartagena was notified that the two suspects were leaving the Colonial Motor Lodge in Cherry Hill. He was told that they had entered a cab which was driving westward on Route 38 toward Camden. This uniformed Trooper was directed to follow defendants in a marked State Police cruiser and, if a reason so occurred, to stop the vehicle and attempt to establish the identity of the occupants. He was not instructed to search the cab or its occupants.
The Trooper followed the cab west on Route 38 to the Browning Road exit. The cab driver failed to stop at the stop sign at the intersection of Route 38 and Browning Road. The Trooper then stopped the cab for this violation.
*552 The Trooper approached the cab on the driver's side and requested the driver's credentials. He complied. The Trooper then recognized the two passengers as fitting the general descriptions of the surveillance subjects which he had received earlier from Sergeant Linden. The Trooper then questioned the passengers about their destination and their "belongings." He got conflicting answers from the two on each subject. He requested their identification documents which they willingly produced, identifying themselves as Luis Abreu and Charles Sanchez.
The Trooper saw that there was a large blue gym bag and a brown Jordache bag between Abreu and Sanchez on the rear seat. He said the defendants were "nervous" and uneasy. Trooper Cartagena had asked them who owned the bags and Sanchez said that both bags belonged to Abreu. Speaking in Spanish, Abreu said that he owned the blue bag. Abreu denied owning the brown Jordache bag and said that it belonged to Sanchez. The conflicting accounts of ownership of the brown bag naturally aroused the Trooper's suspicions. No one claimed that the bags had any name tags or labels on them. The Trooper asked them to get out of the cab and they complied.
Abreu, on the Trooper's request, then signed a Spanish-language standard consent-to-search form for the blue bag, in which he acknowledged that he knew of his right to refuse consent. See State v. Johnson, 68 N.J. 349, 354, 346 A.2d 66 (1975). A search of the blue bag revealed no contraband. Trooper Cartagena, who was born in Puerto Rico and was fluent in Spanish, spoke to Abreu in Spanish at all times. He obtained the consent-to-search in Spanish. Sanchez refused to sign any consent-to-search form.
The Trooper then asked the cab driver if the brown bag belonged to him. The cab driver denied ownership. The cab driver said that each defendant had entered the cab carrying a bag. He was not sure which defendant had carried which bag. *553 The cab driver was quite cooperative and gave the Trooper oral consent to search the "entire vehicle." The Trooper later gave the cab driver a written "warning," but no ticket for the stop sign violation.
Since each defendant and the cab driver had denied ownership of the brown Jordache bag and the cab driver had consented to a search of the vehicle, the Trooper searched the brown bag. The bag contained three glassine bags of a white powder substance, later identified as .63 grams of heroin, a heat sealer, an electronic scale, a box of plastic bags, a six-inch piece of marble, a silver sifter, and other narcotics packaging materials. As Trooper Cartagena searched the brown bag, both defendants stood close by without voicing any protest. After finding the heroin and paraphernalia, Trooper Cartagena placed both defendants under arrest. A search of Abreu incident to the arrest revealed $2,284 in cash on his person. Later, a police dog reacted positively to the money, indicating adulteration by narcotics.
The judge found the State's witnesses credible and the motor vehicle stop proper. But he found the Trooper's questioning of the defendants concerning the brown bag inappropriate and a constitutional violation. The Law Division judge said:
Sergeant Linden has good instinct, he's a good officer. He goes around to various motels and inquires about any possibility of FBI profile that he's been given, if any people fit that description. And he's given a couple suspects. And he watches for a period of 30 days.
Now, Sergeant Linden testified that he didn't observe any criminal activity, so therefore, I find at that point in time he had no basis to obtain a search warrant. He believed he had probable cause, but if you don't see anything to base a search warrant application on, you can't obtain a search warrant. So up until February 19th there's no question that Sergeant Linden did not have enough to obtain a warrant.
Trooper Cartagena  and I can see why the State is very proud of its State Troopers. Cartagena is articulate, bright, does what he's instructed to do, and he's above all candid, and I find his testimony to be candid. He was told you stop that vehicle on any basis that you can. He observed a motor vehicle violation, i.e., going through a stop sign. And he did what he was instructed to do, he stopped the vehicle, and I find that it's a valid stop.

*554 The next prong after that I have problems with, and that is the nexus between getting to the motor vehicle stop of the cab driver, and then getting into the passengers in the back seat. Now, it's undisputed that there were two bags between the passengers and the back seat. Well, I don't think there's any testimony as to where they were located, but it's been brought out in testimony the two bags.
Now, Trooper Cartagena testified the passengers appeared nervous, but he wasn't in fear of his own safety. He also testified that on many motor vehicle stops people tend to be nervous when they're stopped by a State Trooper. The only identifiable nervousness he could testify to was they avoided eye contact. Now, in a normal context that would be the end, the trooper would write a ticket or warning for a motor vehicle stop; but the trooper was instructed to do more; establish identity. There is a cab driver. There has been no nexus between that cab driver and the passengers.
The Constitution of the State of New Jersey, the Constitution of the United States, afford protection against unreasonable searches and seizures. This falls short of those protections. Under Terry versus Ohio, [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] Trooper Cartagena testified very candidly he was not in fear of his safety. They were nervous, and under State versus Lund, [119 N.J. 35, 573 A.2d 1376 (1990)] nervousness alone is not enough.
It's as much as we all  certainly the State Police; are up against it, drugs are prevalent in our society, there's no question about it. But, you still have a Constitution, and the protections afforded in the case fall short. No written consent to search has been introduced. We don't have any testimony from the cab driver. Certainly the State's burden is to establish that this was a consensual search, but, again, of the car. There are protections afforded and it's been denied, therefore, I regrettably must suppress the evidence. Motion granted.
The motor vehicle stop was proper and not objectively "pretextual." See State v. Bruzzese, 94 N.J. 210, 219, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). The Trooper said that he searched the two bags because: "I received conflicting accounts as to the destination, and due to the fact that they both denied ownership of the one brown bag when the cabby said they each came in with a bag." He at first did not intend to conduct a search but he said "one thing led to another."
The questioning of the passengers by the Trooper after the valid stop did not necessarily violate the defendants' constitutional rights. The Supreme Court has held that:
[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him *555 if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.... [T]he person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. [Florida v. Royer, 460 U.S. 491, 497-498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983) (White, J., plurality].
We do not think that this on-the-spot questioning violated defendants' constitutional rights, especially since the stop of the vehicle was valid. See State v. Davis, 104 N.J. 490, 497, 517 A.2d 859 (1986), quoting Florida v. Royer, supra. The casual questioning of these defendants, who already were valid subjects of a drug surveillance, was not at this point overly intrusive. See State in re T.L.O., 94 N.J. 331, 348, 463 A.2d 934 (1983), reversed on other grounds sub. nom., New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), citing Florida v. Royer, supra, for the principle that a brief investigative stop, but not a search, of a person fitting a drug courier profile was justified. See also Florida v. Bostick, 501 U.S. ___, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398-399 (1991) remanded 593 So.2d 494, 17 Fla.L. at 515 (1992) ("mere police questioning does not constitute a seizure"). This was not an impulsive, random stop of a citizen, devoid of any articulable suspicion. Compare Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).
The request for a consent to search was entirely proper. Indeed, there is no constitutional requirement of reasonable suspicion as a prerequisite to seeking consent to search. State v. Allen, 254 N.J. Super. 62, 66, 603 A.2d 71 (App.Div. 1992); 3 LaFave, Search and Seizure § 8.1 at 32 n. 5.1 (Supp. 1992). The request to search the blue bag owned by Abreu resulted in the execution of the consent form by him. That search, of course, was non-productive. At this point no one had consented to the search of the brown bag, but all three occupants of the cab denied ownership of it.
The Trooper then proceeded to search the unclaimed brown bag. No one claimed ownership of it, the defendants *556 stood by without protest during the search, and the cab driver had consented to a search of the "entire vehicle." We conclude that the defendants had "objectively relinquish[ed] [their] expectation of privacy in the object searched," the brown bag. State v. Allen, supra, 254 N.J. Super. at 67, 603 A.2d 71. The defendants both had denied ownership and neither had protested the search of the brown bag. State v. Lee, 245 N.J. Super. 441, 449-450, 586 A.2d 256 (App.Div. 1991). We also conclude that the circumstance leading to the stop and search here "was not the product of illegal, harassing, coercive or deceitful conduct by the police," such as might compel the conclusion that a suspect did not objectively relinquish his expectation of privacy. Id. at 451, 586 A.2d 256. Sanchez clearly said the bag was not his and he did not protest the search of the bag. Abreu also clearly said the bag was not his, nor did he protest the search.
Though the State Police may have been quite opportunistic and very inquisitive, we do not find that they crossed the constitutional line in this close and rather unusual situation. Their conduct was in no sense opprobrious. The stop of the vehicle was entirely legitimate. The questioning of the suspects already under close scrutiny was well-grounded in sufficient investigative suspicion, although this suspicion had not yet ripened into probable cause sufficient to get a search warrant. As noted, casual questioning in a public place does not automatically generate a constitutional infirmity. See Berkemer v. McCarty, 468 U.S. 420, 437-438, 104 S.Ct. 3138, 82 L.Ed.2d 317, 333-334 (1984). The consent by Abreu as to "his bag" was fairly obtained. The denial of the ownership of the brown bag by both was clear cut and unambiguous. We can find no constitutional fault with the State Police in taking advantage of this investigative opportunity. No doubt they fully exploited this investigative opportunity but we do not find their conduct constitutionally overreaching. See State v. Davis, supra, 104 N.J. at 508, 517 A.2d 859.
Reversed.