753 A.2d 149 (2000)
STATE of New Jersey, Plaintiff-Respondent,
v.
Steven J. CARTY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 9, 2000.
Decided June 23, 2000.
*150 Edward J. Crisonino, Westmont, for defendant-appellant.
Lee A. Solomon, Camden County Prosecutor, for plaintiff-respondent (Linda A. Shashoua, Assistant Prosecutor, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and ARNOLD.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Following the denial of his motion to suppress evidence obtained from his person without a warrant during the course of a traffic stop, defendant Steven J. Carty, tried by a jury, was convicted of second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1). A charge of simple possession was merged into that conviction. Defendant was sentenced to a six-year term with no parole ineligibility period, and required penalties were imposed.
The sole issue raised by defendant on appeal is the validity of the pat-down of his person which revealed cocaine in his pocket. We agree with defendant that under the totality of the circumstances here, the pat-down did not meet constitutional muster as a matter of this State's constitutional law. More specifically, the State attempted to justify the pat-down, which took place during a routine traffic stop, by asserting that it was a reasonable measure for the arresting officer to have taken to ensure his safety before proceeding to search the vehicle. The search, in turn, was attempted to be justified by the driver's consent. The officer had, however, no articulable suspicion that a search would reveal evidence of illegal activity. We hold that in the absence of an articulable suspicion, the request to search to which the driver assented offended the State Constitution, and since the proposed search was the only basis for the pat-down, the pat-down was also, necessarily, constitutionally offensive.
The facts respecting the pat-down, both undisputed and as found by the trial court, are as follows. Defendant was a passenger in a car being driven by his brother, Leroy Coley. The car was stopped for speeding on the New Jersey Turnpike by a New Jersey State Trooper, patrolling by himself. The trooper asked the driver for his credentials. The driver then explained that he did not have his driver's license with him and that he had no registration for the car, which had been rented *151 by his father, who had permitted him and his brother to use it that day. Although Coley testified at the suppression hearing that he proffered the rental agreement to the trooper, the motion judge accepted the trooper's contrary testimony that no rental papers were ever produced.
In any event, since Coley had no credentials, the trooper, as he explained, "asked the driver if he would step from his vehicle back to my vehicle so I could write his information down, his name, address, date of birth, for a check if he did have a license. And also to check on the registration." The trooper also testified, although the timing is not clearly determinable, that at some point during the roadside proceedings he was advised by headquarters that Coley did indeed have a valid license and that the car was not stolen. According to the trooper, after obtaining the requested information from Coley and after Coley had told him again that his father had rented the car and "had let him and his brother use the vehicle that day to ride around," the trooper, leaving Coley behind, went back to the car to talk to defendant, who was still sitting in the passenger seat. Defendant told the trooper essentially what his brother had told him respecting the vehicle and also told him that they were returning to Delaware from New York. Defendant was unable to produce any personal identification. He also, according to the trooper, "appeared to be nervous." At that point, the trooper returned to the troop car and asked Coley if he would sign a consent to search form. Coley did so.
It is not clear whether Coley had been placed in the troop car during that conversation with the trooper. But in any case, after he had signed the consent form and was no longer in the troop car, if he had ever been, the trooper asked him if he "could pat him down for my safety prior" to the search. Coley agreed, the pat-down was conducted, and the trooper found nothing. The trooper then went back to the Coley vehicle and asked defendant to step out so it could be searched. Preparing to do so, the trooper, according to his testimony, asked defendant as well if he could pat him down for his own safety and defendant agreed. The trooper's explanation was that during the course of searching the car, he would have to turn his back on both of them and therefore had to frisk them to be sure neither was armed. During the pat-down the trooper felt a hard object in the rear of his pants which the trooper knew was not a weapon but believed was a controlled dangerous substance. He then, he said, read defendant his Miranda[1] warnings, defendant admitted that the object was cocaine, and the trooper confiscated it. Defendant was forthwith arrested and handcuffed, and the trooper proceeded to search the car for some forty minutes, finding nothing incriminating.
To begin with we agree with the trial judge that the stop was obviously justified by the speeding. Our concern is about everything that happened thereafter. We start with the proposition that the only circumstance which made this anything other than a routine traffic stop with the issuance of a summons to the driver and the driver then going on his way without any further police action was the driver's inability to produce credentials. It is, of course, now clear that that circumstance, without more, does not justify a search of the vehicle. As we held in State v. Lark, 319 N.J.Super. 618, 627, 726 A.2d 294 (App.Div.1999), aff'd, 163 N.J. 294, 748 A.2d 1103 (2000):
New Jersey law prescribes exactly what an officer should do when, during a traffic stop, a driver fails to present his license and then lies about his identity. The officer may either detain the driver for further questioning until he satisfies himself as to the driver's true identity, see State v. Dickey, 152 N.J. 468, 476-78, 706 A.2d 180 (1998), or arrest the driver for operating a vehicle without a license, see N.J.S.A. 39:3-29, 39:5-25; *152 see also State v. Campbell, 53 N.J. 230, 237, 250 A.2d 1 (1969). The officer may not, however, absent probable cause to believe that a further offense has been committed, enter the vehicle to look for identification.

[Footnote omitted.]
Justice Verniero, writing for the Supreme Court in its affirmance of Lark, fully endorsed that holding, explaining further that:
In instances such as this, when a driver is without a license and offers false information in response to a reasonable police inquiry, there exists a sufficient basis for the police officer to detain the driver for further questioning until the officer learns the true identity of the driver. State v. Dickey, 152 N.J. 468, 476-83, 706 A.2d 180 (1998) (discussing contours of permissible investigative stops). Assuming that the driver persists in concealing his or her identity and there appears to be no other reasonable alternative, the police officer may take the driver into custody. However, even in that instance, the officer generally may not search the vehicle unless one of the existing exceptions to the warrant requirement is applicable.

[163 N.J. at 296-97, 748 A.2d 1103.]
Here, of course, the driver had not offered false information regarding his identity. He simply did not have his credentials with him. The trooper certainly had the right to detain him until he was satisfied that he was in fact dealing with a licensed driver in a car that was not stolen. There appears to be no reason at all for the trooper not to have waited, before doing anything further, for confirmation from headquarters of those facts, particularly after they were confirmed by the passenger. Had he done so, there would have been no reason for him not merely to issue the appropriate summonses, let the driver and his passenger go on their way, and be done with the matter.
Rather than doing that, however, the trooper, without articulable suspicion that anything else might have been amiss, chose to ask the driver to sign a consent to search form. We are aware that a consent to search is an exception to the warrant requirement. See State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975). It is nevertheless our view that a law enforcement officer making a routine traffic stop cannot ask for a consent to search without at least an articulable suspicion. We note that the prosecutor here conceded that the trooper "would have a reason, obviously, to be searching the car, so it's not like he's just pulling over someone who is speeding or missed a red light and said, `Get out, I'm patting you down, I'm searching your car.'" The question, of course, is whether, if there is no reasonable suspicion, the trooper may nevertheless justify such a search by requesting consent.
In this regard, we deem it significant that in the "Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling" at 31, issued by then Attorney General Verniero on April 20, 1999, reference is made to the State Police Standard Operating Procedures which require, according to the Interim Report, that consent searches be "predicated upon a reasonable, articulable suspicion that the search would reveal evidence of a crime...." The Interim Report, moreover, at 100, reaffirms "the existing policy that a State Police member may request permission to conduct a search only when facts are present that constitute a reasonable, articulable suspicion to believe that the search will uncover evidence of a crime." Finally we note that in the Joint Application for Entry of Consent Decree filed in the United States District Court for the District of New Jersey in United States of America v. State of New Jersey and Division of State Police of the New Jersey Department of Law and Public Safety, Civil No. 99-5970(MLC), paragraph 28 of the Consent Decree, entered in that cause on December 29, 1999, provides in part that:
In order to help ensure that state troopers use their authority to conduct consensual motor vehicle searches in a nondiscriminatory manner, the State Police *153 shall continue to require: that state troopers may request consent to search a motor vehicle only where troopers can articulate a reasonable suspicion that a search would reveal evidence of a crime....
We think it plain in view of the circumstances here, namely, the trooper's ability almost immediately to ascertain the driver's valid license and the status of the vehicle, that he had no articulable suspicion that a search would uncover evidence of a crime. The request for consent, therefore, patently violated State Police procedures.
We are aware that we have previously held that there is no Fourth Amendment requirement of reasonable suspicion as a prerequisite to seeking consent to search after a valid traffic stop. State v. Abreu, 257 N.J.Super. 549, 555, 608 A.2d 986 (App.Div.1992); State v. Allen, 254 N.J.Super. 62, 66, 603 A.2d 71 (App.Div.1992). As Allen pointed out, that proposition apparently reflects the majority view respecting the mandate of the Fourth Amendment of the Federal Constitution. See also 2 LaFave et al., Criminal Procedure, § 3.10(a) at 295 n.1 (2d ed.1999). Nevertheless, in State v. Alston, 88 N.J. 211, 225, 440 A.2d 1311 (1981), our Supreme Court held that Article 1, paragraph 7 of our State Constitution may independently "afford the citizens of this State greater protection against unreasonable searches and seizures than may be required by the Supreme Court's interpretation of the Fourth Amendment...."[2]
We conclude that that greater protection available under the State Constitution is required here. Requests to consent to an automobile search are obviously, as a matter of common experience, likely to be complied with. Consequently, baseless requests almost inevitably result in a search. It is our view that travelers on our State highways should not be subject to the harassment, embarrassment and inconvenience of an automobile search following a routine traffic stop unless the officer has at least an articulable suspicion that the search will yield evidence of illegal activity. We are, moreover, mindful that the State Police itself acknowledges not only that the requirement of an articulable suspicion does not detract from the performance of proper police work but that it is indeed the standard by which to measure the propriety of a request to search. In these circumstances, the courts should do no less to protect individual rights than the State Police itself is willing to do. It is for these reasons that we now hold that articulable suspicion is a necessary prerequisite under the New Jersey Constitution to requesting a consent to search after a routine stop for a traffic violation.[3]
Beyond all that and alternatively, we point out that the trial judge took the view that the only legitimate purpose for requesting the consent was to search for credentials. Indeed, under the circumstances, we can think of no other. Lark, of course, precludes a non-consensual search for that purpose. But we are satisfied that if that was indeed the purpose, then this pre-Lark consent search was required to be limited to the areas of the car where credentials are usually kept, namely the glove compartment and the sun visor. *154 See, e.g., State v. Holmgren, 282 N.J.Super. 212, 215, 659 A.2d 939 (App.Div.1995); State v. Jones, 195 N.J.Super. 119, 122-123, 478 A.2d 424 (App.Div.1984). We recognize that the consent form was not itself limited in respect of the scope of the search, and ordinarily a search based on a validly obtained consent would not be. Our point here, however, is simply to note that if there was no articulable suspicion that a search of the vehicle would yield evidence of illegal activity and if the trooper premised the request to search only on an intention to look for credentials, then as a matter of pre-Lark law the scope of the search could not legitimately go beyond the normal credential-storing areas of the vehicle.
We have addressed the consent to search in this case because it was the only purported basis of the pat-down of defendant. Thus, if the consent fails, then the pat-down, itself unsupported by articulable suspicion, must fail as well. But even if the consent could be deemed proper, we nevertheless conclude that the pat-down was not. As we have pointed out, the trooper's only proffered justification for the pat-down was the search, that is, that he was concerned about turning his back, while searching, on the two occupants of the car while they were unobserved. We are satisfied that this could, in fact, have been the only justification since there is nothing in this record to suggest that the trooper otherwise had any reasonable belief in a threat to his safety. See, e.g., State v. Smith, 134 N.J. 599, 618, 637 A.2d 158 (1994); State v. Walker, 282 N.J.Super. 111, 114, 659 A.2d 527 (App.Div.1995). Even if this concern of the trooper's did, in the circumstances, raise a reasonable belief that his safety might be threatenedand we note that he apparently did not have this concern when he left the passenger unobserved to record the information given him by the driver or when he left the driver unobserved to speak with the passengerthere were other means at hand to address it without conducting a pat-down that was otherwise constitutionally violative. The trooper could certainly have called for a back-up unit to observe the two while he searched, or he could have placed and secured the two in his troop car. The exigency that he thus proffered as justifying the search was in effect of his own making.[4] While alternative steps might well have been somewhat inconvenient for the police, the balance must come down, in our view, on the protection of constitutional rights. In any event we are satisfied that a consent to search without articulable suspicion cannot of itself constitute the sole basis for a subsequent pat-down that has no other constitutional justification.
The order denying the motion to suppress is reversed, and we remand for further proceedings.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Art. 1, par. 7 reads as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreason-able searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.
[3] We are aware that in Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), the United States Supreme Court held that as a matter of Fourth Amendment imperative, the voluntariness of a driver's consent to search, requested without articulable suspicion, cannot be made to depend upon his being told by the police that if he refuses to consent to the search, he will be free to go. We do not address, because not necessary to decision here, the question of whether such a police advisory is, as a matter of state constitutional mandate, a prerequisite to a voluntary consent to search where there is no articulable suspicion.
[4] We note that the driver testified, but the trooper denied, that while the trooper was first obtaining information from him, another troop car passed and slowed but the trooper waved it on.