773 A.2d 711 (2001)
340 N.J. Super. 1
STATE of New Jersey, Plaintiff-Appellant,
v.
Igor YANOVSKY and Roman Krylov, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 2001.
Decided April 24, 2001.
*713 Katharine L. Errickson, Assistant Prosecutor, argued the cause for appellant (Stephen B. Rubin, Hunterdon County Prosecutor, attorney; Ms. Errickson, of counsel and on the brief).
J. Michael Blake, Assistant Deputy Public Defender, argued the cause for respondent Roman Krylov (Peter A. Garcia, Acting Public Defender, attorney; Mr. Blake, of counsel and on the brief).
Respondent Igor Yanovsky did not file a brief.
Before Judges HAVEY,[1] CUFF and LISA.
*712 The opinion of the court was delivered by LISA, J.A.D.
The State appeals, by leave granted, from an order suppressing evidence seized as a result of a consent search conducted in conjunction with a routine motor vehicle stop. The suppression was grounded upon a finding that the police lacked an articulable suspicion that the search would yield evidence of illegal activity and was therefore improper under the principles of State v. Carty, 332 N.J.Super. 200, 753 A.2d 149 (App.Div.2000).[2] The State argues that Carty established a new rule of law which should not be applied retroactively to this pre-Carty search. We disagree and affirm.
At midnight on November 6, 1998, Troopers Donato and Levy clocked defendants on stationary radar traveling seventy-five m.p.h. in a sixty-five m.p.h. zone westbound on Interstate 78 in Hunterdon County. They uneventfully pulled defendants over. Before exiting the troop car, Donato determined by way of NCIC lookup that defendants' vehicle was not stolen. The vehicle had an Ohio dealer license plate. The driver, Igor Yanovsky, produced a valid driver's license but was unable to produce a registration or insurance card.[3] Upon questioning by Donato, Yanovsky stated that he did not know the identity of the vehicle's owner, but that a friend who worked for a dealer had lent him and Krylov the car to go to New York for three days, and they were now returning to Ohio. Upon visual inspection of the interior of the vehicle (an S.U.V. with no separate trunk compartment), Donato did not observe any luggage. Considering this to be inconsistent with a three day trip, Donato inquired about it. Yanovsky *714 then exited the vehicle, opened the hatch back and pointed out a leather carry-on bag, measuring approximately two feet by three feet, and a plastic trash bag containing articles of clothing. Donato nevertheless persisted in his questioning, separating the two defendants and perceiving some unspecified inconsistencies in their responses to him about "where they were and the amount of time they were there, [and] what they were doing" while in New York.
Donato then requested and obtained from Yanovsky a consent to search the vehicle.[4] At 12:28 a.m., nearly one-half hour after the initial stop, Donato began the search. After searching the plastic bag with clothing, he asked who owned the leather bag. When both defendants denied ownership, he opened it. It contained clothing and toiletries. It also contained a manilla envelope, which had inside a heatsealed bag, containing approximately 1,000 "unmarked tablets," which Donato seized. Subsequent laboratory analysis determined the tablets to be MDMA,[5] commonly known as "Ecstasy," a controlled dangerous substance ("CDS"). The seizure of the CDS formed the basis of this prosecution in which defendants have been indicted for possession of a CDS in violation of N.J.S.A. 2C:35-10a(1) and possession of a CDS with intent to distribute in violation of N.J.S.A. 2C:35-5a(1) and -5b(13).
The trial judge suppressed the seized CDS, finding that the police did not possess a reasonable articulable suspicion that the search would yield evidence of criminal activity.[6] That finding is supported by substantial, credible evidence in the record. State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964).
In Carty, supra, this court, in reliance on Article 1, paragraph 7 of the State Constitution, held that during a routine motor vehicle stop, "in the absence of an articulable suspicion, the request to search to which the driver assented offended the State Constitution." State v. Carty, supra, 332 N.J.Super. at 202, 753 A.2d 149. The rationale underlying the Carty decision was based, in part, on a recognition that the New Jersey State Police had in effect a Standard Operating Procedure requiring reasonable, articulable suspicion of their members before requesting a consent to search. Id. at 206, 753 A.2d 149. This was acknowledged in the "Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling," issued on April 20, 1999. A similar requirement was included in a Consent Decree entered on December 29, 1999 in a Federal action initiated by the United States of America against New Jersey regarding racial profiling, which provided:
In order to help ensure that state troopers use their authority to conduct consensual motor vehicle searches in a nondiscriminatory manner, the State Police shall continue to require: that state troopers may request consent to search a motor vehicle only where a trooper can articulate a reasonable suspicion that a search would reveal evidence of a crime....

*715 [Ibid. (emphasis added).]
The rationale was also based on a need to protect the traveling public from unwarranted "harassment, embarrassment and inconvenience." Id. at 207, 753 A.2d 149.
We recognized that under Fourth Amendment analysis such reasonable suspicion was not deemed a prerequisite to requesting a consent to search after a valid motor vehicle stop. State v. Abreu, 257 N.J.Super. 549, 555, 608 A.2d 986 (App. Div.1992); State v. Allen, 254 N.J.Super. 62, 66, 603 A.2d 71 (App.Div.1992). Indeed, one week after Carty, the same Fourth Amendment analysis was followed in State v. Chapman, 332 N.J.Super. 452, 753 A.2d 1179 (App.Div.2000). However, in Carty, we recognized that "our Supreme Court [has] held that Article 1, paragraph 7 of our State Constitution may independently `afford the citizens of this State greater protection against unreasonable searches and seizures than may be required by the Supreme Court's interpretation of the Fourth Amendment....'" Id. at 207, 753 A.2d 149 (quoting State v. Alston, 88 N.J. 211, 225, 440 A.2d 1311 (1981)).
Considering the existing State Police policy and recognizing that baseless requests for consent searches incidental to routine motor vehicle stops are almost always complied with, these searches were deemed to be an appropriate subject of greater protection under the State Constitution. We find the reasoning in Carty to be sound and persuasive, particularly since its underpinnings are grounded, in significant part, on issues of State concern, and we subscribe to it. See State v. Hunt, 91 N.J. 338, 366-67, 450 A.2d 952 (1982) (Handler, J., concurring).
The State argues that the holding in Carty should not be given retroactive application. The analysis of this issue begins with the threshold determination of whether that holding is a "new rule of law." State v. Burstein, 85 N.J. 394, 403, 427 A.2d 525 (1981). Our Supreme Court has adopted the United States Supreme Court's definition that a "`case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government ... [or] if the result was not dictated by precedent existing at the time the defendant's conviction became final.'" State v. Lark, 117 N.J. 331, 339, 567 A.2d 197 (1989) (quoting Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L. Ed.2d 334, 349 reh'g denied, 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989)). See also State v. Johnson, 166 N.J. 523, 546-47, 766 A.2d 1126 (2001); State v. Knight, 145 N.J. 233, 250-51, 678 A.2d 642 (1996).
Defendants argue that Carty is but one more step in the "steadily evolving commitment" of New Jersey courts to "provide enhanced protection for our citizens against encroachment of their right to be free from unreasonable searches and seizures." State v. Pierce, 136 N.J. 184, 209, 642 A.2d 947 (1994). They point to a continuing line of decisions in which our Supreme Court has afforded greater protection to New Jersey citizens under Article 1, paragraph 7 of our State Constitution than the United States Supreme Court has provided under the Fourth Amendment. See State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975) (consent to search must be knowing, which requires that defendant knew there was a right to refuse consent); State v. Alston, supra, 88 N.J. at 226-29, 440 A.2d 1311 (automatic standing to challenge search when charged with possession of the seized items); State v. Hunt, supra, 91 N.J. at 348, 450 A.2d 952 (police may not seize telephone billing records without a warrant); State v. Novembrino, 105 N.J. 95, 153-159, 519 A.2d 820 (1987) (rejection of *716 "good faith exception" to Fourth Amendment); State v. Hempele, 120 N.J. 182, 195-221, 576 A.2d 793 (1990) (prohibition of warrantless search of garbage bags placed at curb); and State v. Tucker 136 N.J. 158, 165-69, 642 A.2d 401 (1994) (prohibition of stopping defendant solely because he ran upon seeing police). Defendants urge, therefore, that Carty did not break new ground and does not constitute a new rule of law. We cannot agree.
Although earlier State court precedents derived their authority from the Fourth Amendment, they were clear and unambiguous in not requiring reasonable suspicion as a prerequisite to requesting a consent to search in conjunction with a motor vehicle stop. Abreu, supra, 257 N.J.Super. at 555, 608 A.2d 986; Allen, supra, 254 N.J.Super. at 66, 603 A.2d 71. We hold that Carty did announce a new rule of law.
In determining retroactive application of a new rule, four judicial options are available:
(1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review [pipeline retroactivity]; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted. State v. Nash, 64 N.J. 464, 468-70, 317 A.2d 689 (1974).
[Burstein, supra, 85 N.J. at 402-03, 427 A.2d 525.]
See also Knight, supra, 145 N.J. at 249, 678 A.2d 642. The determination of retroactive application is generally guided by three factors: "(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice." Id. at 251, 678 A.2d 642 (citation and internal quotations omitted).
In evaluating the first factor, we note that when the new rule is an exclusionary rule, the purpose of which is solely to deter illegal police conduct, it is virtually never given retroactive effect. The deterrent purpose of such a rule would not be advanced by applying it to past misconduct. State v. Catania, 85 N.J. 418, 446-47, 427 A.2d 537 (1981); State v. Carpentieri, 82 N.J. 546, 549, 414 A.2d 966 (1980); State v. Howery, 80 N.J. 563, 569, 404 A.2d 632 (1979). However, where exclusion of evidence obtained in violation of a defendant's constitutional rights is not the sole purpose of the new rule, evaluation of the "reliance" and "administration of justice" factors are appropriate in reaching a conclusion. Knight, supra, 145 N.J. at 256, 678 A.2d 642. In Knight, the Court granted pipeline retroactivity to the rule previously announced in State v. Sanchez, 129 N.J. 261, 609 A.2d 400 (1992), that "postindictment interrogation of defendant violated his right to counsel under Article 1, paragraph 10 of the New Jersey Constitution" requiring suppression of his confession, id. at 279, 609 A.2d 400, because the purpose of that exclusionary rule was also to enhance the reliability of confessions. Knight supra, 145 N.J. at 256-58, 678 A.2d 642.
The purpose of the Carty rule is best determined by looking to the reasons for that rule expressed in Carty itself:

*717 We conclude that that greater protection available under the State Constitution is required here. Requests to consent to an automobile search are obviously, as a matter of common experience, likely to be complied with. Consequently, baseless requests almost inevitably result in a search. It is our view that travelers on our State highways should not be subject to the harassment, embarrassment and inconvenience of an automobile search following a routine traffic stop unless the officer has at least articulable suspicion that the search will yield evidence of illegal activity. We are, moreover, mindful that the State Police itself acknowledges not only that the requirement of an articulable suspicion does not detract from the performance of proper police work but that it is indeed the standard by which to measure the propriety of a request to search. In these circumstances, the courts should do no less to protect individual rights than the State Police itself is willing to do. It is for these reasons that we now hold that articulable suspicion is a necessary prerequisite under the New Jersey Constitution to requesting a consent to search after a routine stop for a traffic violation.
[Carty, supra, 332 N.J.Super. at 207, 753 A.2d 149.]
Although the rule is intended, in part, to exclude the State's use of ill-gotten evidence, its purpose also includes: (1) protection of travelers from unwarranted "harassment, embarrassment and inconvenience" resulting from "baseless requests" for consent to search, even where no evidence of crime is found;[7] and (2) attribution of the force of law to the pre-existing policies of the State Police. We therefore consider the other retroactivity factors.
The "reliance" factor weighs heavily in favor of retroactive application. Since the State Police had in effect a Standard Operating Procedure requiring articulable suspicion, they can hardly assert reliance on the prior rule. The "administration of justice factor" weighs in favor of limited retroactivity. We do not expect that the number of pending cases in which this is an issue, including those on direct appeal, should be so numerous as to place an undue burden on the criminal justice system. Under these circumstances, it would indeed be an anomaly if Mr. Carty obtained the benefit of the Carty rule after conviction and Messrs. Yanovsky and Krylov were deprived of it while presumed innocent.
However, to allow full retroactivity would have the potential of imposing upon the State the burden of re-prosecuting cases for offenses which occurred many years ago. "Because of failing memories and unavailable witnesses, the problems encountered in prosecuting such cases often are insurmountable." Knight, supra, 145 N.J. at 257-58, 678 A.2d 642 (citing Lark, supra, 117 N.J. at 341, 567 A.2d 197). This circumstance, combined with the potentially large number of affected cases as well as the fact that the pre-Carty rule did not affect the reliability of the truth-finding process, see Burstein, supra, 85 N.J. at 406-07, 427 A.2d 525, leads us to conclude that full retroactivity would place an undue and unwarranted strain on the administration of justice.
We hold that the Carty rule applies to this case and to all pending cases, including those on direct appeal at the time *718 Carty was decided, but not to those cases in which defendants had exhausted all avenues of direct relief at the time Carty was decided.
Affirmed.
NOTES
[1] Judge Havey did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).
[2] State v. Carty is currently before the New Jersey Supreme Court on a grant of certification. 165 N.J. 605, 762 A.2d 219 (2000).
[3] We note that drivers of out-of-state vehicles are not required to produce proof of insurance. See State v. Arslanouk, 167 N.J.Super. 387, 400 A.2d 1206 (App.Div.1979) (holding that the driver of a vehicle registered in California was not required to produce proof of liability insurance pursuant to N.J.S.A. 39:6B-1). We also note that the only summons issued was for the speeding violation.
[4] The consent was obtained by use of a standard written "Consent to Search" form. Donato's testimony and the provisions of the form establish that Yanovsky's consent was freely and voluntarily given. State v. Johnson, 68 N.J. 349, 346 A.2d 66 (1975). Defendants have not raised this issue either below or on appeal.
[5] Methylenedioxymethamphetamine.
[6] Although this finding was not expressly stated in the trial judge's written decision of October 31, 2000, it is clearly implied since he granted the suppression motion in reliance on Carty, supra.
[7] The Interim Report states, at 28, that "[n]ot surprisingly, most consent searches do not result in a positive finding."