796 A.2d 934 (2002)
351 N.J. Super. 25
STATE New Jersey, Plaintiff-Respondent,
v.
Brian L. PEGEESE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 2002.
Decided May 16, 2002.
Peter A. Garcia, Acting Public Defender, attorney for appellant (Cecelia Urban, Assistant Deputy Public Defender, of counsel and on the brief).
Boris Moczula, Acting Passaic County Prosecutor, attorney for respondent (Michelle Katich, Special Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, EICHEN and PARKER.
The opinion of the court was delivered by *935 EICHEN, J.A.D.
Following denial of his motion to suppress, defendant Brian L. Pegeese entered a guilty plea to first degree possession of a controlled dangerous substance with intent to distribute (cocaine) (count two), N.J.S.A. 2C:35-5a(1) and b(1) and N.J.S.A. 2C:2-6, and second degree possession of a controlled dangerous substance with intent to distribute (heroin) (count four), N.J.S.A. 2C:35-5a(1) and b(2) and N.J.S.A. 2C:2-6, charged in Indictment No. 97-12-1130-I. He also pleaded guilty to Accusation No. 98-10-929-A charging him with second degree possession of a controlled dangerous substance with intent to distribute (count one), N.J.S.A. 2C:35-5b(2), and third degree possession of a controlled dangerous substance within 1,000 feet of a school zone (count two), N.J.S.A. 2C:35-7.
The judge sentenced defendant on count two of the indictment to ten years in prison with a parole ineligibility term of five and one-half years, and to five years in prison on count four, to run concurrent to count two. On the accusation, defendant was sentenced on count one to five years in prison with a parole ineligibility period of four and one-half years, and, on count two, to five years in prison with a parole ineligibility period of four and one-half years, to run concurrent to count one and concurrent to counts two and four of the indictment.
The facts underlying the motion on the indictment were developed solely from the testimony of Trooper Brian Long. On May 21, 1997, at approximately 1:40 a.m., defendant was a passenger in a 1989 red Buick Riviera driven by co-defendant Troy Kelly[1] and traveling westbound on Interstate Route 80. Trooper Long and his partner Trooper Frank Monte were patrolling in the area when they observed the Riviera in the left lane traveling at "a high rate of speed." Trooper Long pulled in behind the vehicle and paced it for "a short period of time" traveling sixty-eight miles per hour in a fifty-five mile per hour zone. Suddenly, without using its directional, the vehicle cut sharply across two lanes without signaling and exited Route 80 at Exit 59. Trooper Long activated his overhead lights and followed the vehicle off the roadway, pulling it over on Market Street in the City of Paterson.
Prior to executing the stop, Trooper Long called in the license plate number to check whether the vehicle had been stolen. He did not receive a report of the vehicle's status until after defendant had been arrested.
Trooper Long approached the driver's side of the vehicle and Trooper Monte went to the passenger side. In response to Trooper Long's request of the driver for his driving credentials, Kelly stated he did not have a driver's license, but produced a vehicle registration for the car. The registration was in the name of a third person, Janelle Davis, who was not present in the vehicle. Kelly then advised Trooper Long that his license had been suspended.
Trooper Long instructed Kelly to exit the vehicle and had a brief conversation with him in front of the car concerning their recent whereabouts. He then approached the passenger, later identified as defendant, who was still seated in the vehicle, and had "a brief conversation" with him. Based on those conversations, the trooper decided to ask the driver if he would consent to a search of the car because defendants' stories were "different" and "conflicting," they had no identification, *936 or driver's license, and the check on the registration had not yet been received. Kelly consented to the search and signed the consent to search form. As a result of the search, Trooper Long found a blue plastic bag containing eight ounces of cocaine and approximately 350 "decks" of heroin in the door vent on the passenger's side.
On appeal, defendant raises the following arguments:
POINT I
SINCE THE STATE TROOPERS LACKED A REASONABLE SUSPICION THAT THE CO-DEFENDANTS HAD ENGAGED IN ANY CRIMINAL ACTIVITY, THEIR REQUEST FOR CONSENT TO SEARCH THE VEHICLE WAS IMPROPER, KELLY'S CONSENT TO SEARCH WAS INVALID, AND THE TRIAL COURT SHOULD HAVE SUPPRESSED THE EVIDENCE FOUND IN THAT SEARCH.
POINT II
BOTH THE FEDERAL AND STATE CONSTITUTIONS PROSCRIBE THE POLICE FROM EXPANDING THE LEGITIMATE SCOPE OF A TERRY[2] STOP BY SEEKING EVIDENCE OF UNRELATED OFFENSES WITHOUT A REASONABLE, ARTICULABLE SUSPICION THAT THE DETAINEES HAVE COMMITTED OTHER CRIMINAL OFFENSES. (Not raised below)
POINT III
THE PAROLE INELIGIBILITY TERMS THE TRIAL COURT IMPOSED ARE ILLEGAL. (Not raised below).
Defendant argues that under our holding in State v. Carty, 332 N.J.Super. 200, 753 A.2d 149 (App.Div.2000), he is entitled to a reversal of the trial court's order denying his motion to suppress evidence.[3] In Carty, we held that for a consent to search a motor vehicle during a routine traffic stop to pass muster under our state constitution, the law enforcement officer requesting the consent must have an articulable and reasonable suspicion that the occupants are participating in criminal wrongdoing. Id. at 202, 753 A.2d 149.
On March 4, 2002, the Supreme Court affirmed our decision in State v. Carty, 170 N.J. 632, 790 A.2d 903 (2002). The Court held that because its decision had announced "a new rule of law" it would apply retroactively to only those stops made after June 23, 2000,[4] the date on which the Appellate Division rendered its decision. Id. at 651, 790 A.2d 903.
Thereafter, by order dated April 29, 2002, the Court modified its "opinion and judgment" to allow "the Court's judgment [to] apply to all cases pending in the trial court and on direct appeal as of June 23, 2000." Because defendant's appeal was pending on June 23, 2000, the argument concerning the consent search raised in Point I of defendant's brief is entitled to consideration. However, we have determined not to exercise our original jurisdiction to review the issue. R. 2:10-5. Accordingly, we remand the matter to the Law Division to determine whether the trooper's request for a consent to search of the vehicle was justified under State v. Carty, 170 N.J. 632, 790 A.2d 903 (2002). However, we have considered defendant's *937 argument in Point II of his brief, but conclude it is without merit. Our discussion of this issue follows.
Defendant argues that Trooper Long's questioning of the driver and defendant concerning their recent whereabouts improperly "extended the scope of the stop and altered its nature" in violation of the federal and state constitutions.
In State v. Dickey, 152 N.J. 468, 476, 706 A.2d 180 (1998), our Supreme Court applied the two-part test from Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968), to measure the reasonableness of a detention following a valid motor vehicle stop: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Dickey, supra, 152 N.J. at 476, 706 A.2d 180 (quoting Terry, supra, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L. Ed.2d at 905).
In State v. Hickman, 335 N.J.Super. 623, 763 A.2d 330 (App.Div.2000), we iterated the general rule that a stop is reasonable if "the stop lasts no longer than is necessary to effectuate [its] purpose." Id. at 634, 763 A.2d 330 (quoting Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238 (1938)); see Dickey, supra, 152 N.J. at 475, 706 A.2d 180. Applying these principles, we stated that "if a motor vehicle is subject to a valid police stop, the police may question the occupants, even on a subject unrelated to the purpose of the stop, without violating the Fourth Amendment, so long as such questioning does not extend the duration of the stop." Hickman, supra, 335 N.J.Super. at 636, 763 A.2d 330 (citations omitted). We observed that although "appellants were under no obligation to answer the questions, the Constitution does not forbid law enforcement officers from asking." 335 N.J.Super. at 636-37, 763 A.2d 330. See also State v. Chapman, 332 N.J.Super. 452, 463-65, 753 A.2d 1179 (App.Div.2000) (determining that the officer had a reasonable basis for asking questions concerning whether the occupants of the vehicle stopped for a motor vehicle violation owned or had permission to use the car after it was revealed that the driver and the occupants lacked a valid license).
In Hickman, we highlighted a federal decision involving facts practically identical to those in the present case in which the defendant had challenged the officer's right to question the occupants of the stopped vehicle pending a computer check of the operator's driving credentials. Hickman, supra, 335 N.J.Super. at 636, 763 A.2d 330 (discussing United States v. Shabazz, 993 F.2d 431 (5th Cir.1993)). In Shabazz, the Fifth Circuit held that the "[a]ppellants [could not] complain of questioning that took place during the pendency of [the] computer check." Ibid.
Similarly, in Carty, our Supreme Court discussed a number of decisions involving consents to search where the vehicles were stopped for traffic violations and the occupants were detained briefly for questioning. See 170 N.J. at 640-44, 790 A.2d 903. From these decisions, we draw the principle that in the absence of any evidence of criminal wrongdoing, once a law enforcement officer is satisfied that the operator of a vehicle stopped for a traffic violation has a valid license and that the vehicle is not stolen, the officer may not detain the occupants of the vehicle for further questioning in anticipation of requesting a consent to search. Such detention cannot be deemed reasonably related in scope to the circumstances which justified the stop in the first place. See Dickey, supra, 152 N.J. at 476, 706 A.2d 180.
*938 In this case, we conclude that the continued detention of the driver and defendant by the troopers while they waited for the results of the registration and license checks was permissible, and their brief questioning concerning the recent whereabouts of the occupants during the short wait for these results did not violate either the state or federal constitutions.
The troopers requested a vehicle check prior to the stop. After they stopped the vehicle for speeding, it was revealed that neither the driver nor the passenger had a valid driver's license in his possession or could produce any identification. Indeed, the driver's license had been suspended. In addition, although the driver produced a third-party registration for the vehicle, at the point that Trooper Long engaged defendants in conversation, he had not yet received a reply to his inquiry concerning the status of the ownership of the vehicle. Not knowing whether he was involved with a stolen vehicle, or whether the driver had permission of the owner to operate the car, and confronted by two individuals who had neither a driver's license nor any other form of identification, the trooper was entitled to question the occupants concerning their recent whereabouts while he waited for the results of the computer check.
The decisions cited and relied on by defendant are unavailing because in each of those decisions, all suspicion of wrongdoing had been dispelled before the police officers commenced their additional questioning of the vehicles' occupants. See, e.g., U.S. v. Holt, 229 F.3d 931, 938 (10th Cir.2000), aff'd en banc, 264 F.3d 1215 (10 Cir.2001); State v. Retherford, 93 Ohio App.3d 586, 639 N.E.2d 498, 507 (1994); Cooper v. State, 654 So.2d 229, 230-31 (Fla.App.1995).
Accordingly, subject to the remand for reconsideration of the Carty issue, we affirm the order denying the motion to suppress the evidence under the Fourth Amendment and Article I, paragraph 7 of the state constitution.
The State concedes that the trial judge erred in imposing minimum terms which exceed the maximum parole ineligibility periods allowed on count two of Indictment No. 97-12-1130 and on both counts of Accusation No. 98-10-829. Accordingly, we reverse the minimum terms imposed on those counts and remand for reconsideration of defendant's sentence.
The matter is remanded to the trial court for reconsideration and decision on the suppression motion in light of Carty, supra, 332 N.J.Super. at 202, 753 A.2d 149 and for further proceedings not inconsistent with this opinion. If the motion is not granted, the trial court shall resentence defendant on both the indictment and the accusation. If the court grants the motion, the convictions under the indictment and the accusation shall be vacated and the court shall conduct further proceedings as required.
The matter is remanded for further proceedings not inconsistent with this decision.
NOTES
[1] Troy Kelly was charged with committing the same offenses as defendant in Indictment No. 97-12-1130.
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968).
[3] Defendant filed a motion to suppress the evidence seized during the stop before our decision in Carty was issued, advancing other grounds. The denial of the motion on those grounds is not challenged on this appeal. Accordingly, we consider them to be abandoned.
[4] This defendant's vehicle was stopped on May 21, 1997.