638 A.2d 886

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. ASTON DALE, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 16, 1994—Decided March 14, 1994.

Before Judges SHEBELL, LONG and LANDAU.

*Edward F. Borden, Jr.,* Camden County Prosecutor, attorney for appellant (*Kathleen M. Higgins,* Assistant Prosecutor, of counsel and on the letter-brief).

*Raymond E. Milavsky,* attorney for respondent.

The opinion of the court was delivered by

LANDAU, J.A.D.

On leave granted, the State of New Jersey appeals from an interlocutory order which granted the motion of defendant Aston Dale to suppress evidence consisting of a .38 calibre semi-automatic handgun discovered during a warrantless pat-down search of his person. We previously remanded the matter for additional findings by the motion judge respecting specifics of the search, and for reconsideration of the motion upon application of the law to those findings.

The findings of the motion judge, now somewhat more fleshed out, make clear that he credited the testimony of Detective White and did not accept defendant Dale's version of the circumstances preceding the pat-down. We discern from the transcripts of the two hearings that the judge believed Dale was a passenger in a

1983 Ford pick-up truck driven by Clifford Innis; that two police officers in an unmarked Camden police car observed that the truck was being operated recklessly in a no-passing zone, forcing vehicles off the road and even mounting the sidewalk; that when the officers approached the truck and identified themselves at a traffic light where it had stopped, the driver said, "F ... the police" and sped away, knocking the officer who was on the passenger side onto the hood and then to the ground; that this engendered a vehicular chase by the two officers and a total of seven police cars, several of which succeeded in blocking the road; that when the pick-up was forced to stop, one of the officers (a detective) asked Dale to exit the car, then patted him down; that Dale was not recognized as a known criminal; and that he did not make any statements, movements or gestures which appeared to present a risk that he was armed and potentially dangerous. The judge stated: "[c]ompanionship alone or mere presence does not indicate any criminality on the part of Mr. Dale."

Based upon these findings, the judge concluded from the totality of circumstances that Dale presented no threat, and that "Detective White specifically did not have a reasonable objective basis for doing a pat-down search of Mr. Dale." Accordingly, evidence of Dale's semi-automatic weapon, discovered during the pat-down, was suppressed.

■■ We reverse. Initially, we recognize that the State bears the burden to justify warrantless searches under a recognized exception to the warrant requirement. *State v. Sims*, 75 *N.J.* 337, 352, 382 *A.2d* 638 (1978). The question presented on appeal is whether the State's burden has been met under the totality of circumstances in this case, which were far removed from those present in an ordinary stop for a traffic violation. Here, upon their initial approach and identification to talk to the driver about the previously observed motor vehicle offenses, police were met not only with profanity, but with a vehicular assault upon one officer, followed by immediate flight of the pick-up truck and its

occupants. Apprehension followed a multi-car police pursuit through city streets.

Police officers, we believe, may, indeed intelligently should, objectively suspect that such an assault and precipitate flight is motivated by more than a desire to avoid a traffic citation. The "mere presence" of a single passenger in that setting is not inherently benign, but is open to no less suspicion as to the occasion for the assault and flight than is the conduct of the driver. While it is possible that Dale may have been unable voluntarily to leave the truck, it is no less possible from the standpoint of a reasonable, objective officer that the extraordinary conduct was to protect one or both occupants from police apprehension for criminal acts known to the occupants.

Moreover, Dale was together with Innis during the initial reckless operation observed by the police. He did not avail himself of the apparent opportunity afforded by the traffic light and approach of the police to disassociate himself from that prior conduct. He then shared occupancy of the truck during the flight and chase, halted only when the road was blocked.

■ While it is true that "mere presence" at the scene of a crime does not in itself conclusively prove guilt, it is a circumstance to be considered with the other evidence in determining accomplice status under *N.J.S.A.* 2C:2–6c(1).

■ It has appropriately been recognized that there is greater reason for concern of a police officers' safety when a car is stopped for suspected serious criminal activity, than when the stop is only for a traffic violation. *See* 3 LaFave, *Search & Seizure,* § 9.4(a), (b) (2d ed. 1987). Such concern for police protection, *a fortiori,* is legitimate when criminal activity has actually been observed.

Even in the limited setting of a pure traffic stop, a protective pat-down can be justified if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or

that of others was in danger." *State v. Lund,* 119 *N.J.* 35, 39, 573 *A.*2d 1376 (1990).[1]

As to police-ordered exit of passengers from a motor vehicle during a traffic stop, our Supreme Court recently held that there must be articulable specific reasons why more danger was expected from that stop than from routine traffic stops. *State v. Smith,* 134 *N.J.* 599, 619, 637 *A.*2d 158 (1994). This, however, was no routine traffic stop. An officer had been cursed at, then assaulted, and a serious vehicular chase had just been concluded by the stop. Police had good reason to fear for their safety, much as if the car had been seen departing from a bank robbery, or if the driver had fired a gun at the police. That Dale was not observed making any overtly threatening moves or actions when the truck was forced to a stop, does not dissipate the reasonable suspicion engendered by his co-occupancy of the same vehicle, and the absence of any conduct tending to show disassociation from the criminal event. This, as recognized in our model criminal "accomplice" charge, is at least "evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same." *State v. Smith,* 32 *N.J.* 501, 521, 161 *A.*2d 520 (1960), *cert. denied,* 364 *U.S.* 936, 81 *S.Ct.* 383, 5 *L.Ed.*2d 367 (1961) (quoting *State v. De Falco,* 8 *N.J.Super.* 295, 299, 74 *A.*2d 338 (App.Div.1950).

We see Dale's presence, as one of two persons sharing occupancy of a pick-up truck, to be materially different from the kind of happenstance presence, unconnected to the lawfully permitted search, which was found insufficient to support a patdown in *Ybarra v. Illinois,* 444 *U.S.* 85, 100 *S.Ct.* 338, 62 *L.Ed.*2d 238 (1979), *reh'g denied,* 444 *U.S.* 1049, 100 *S.Ct.* 741, 62 *L.Ed.*2d 737 (1980).

---

[1] This is the *Terry* standard. *Terry v. Ohio,* 392 *U.S.* 1, 27, 88 *S.Ct.* 1868, 1883, 20 *L.Ed.*2d 889, 909 (1968).

In sum, this pat-down was not incident to a traffic stop; it was incident to a crime in progress which had just been ended by the stop. The instrument of its commission was the very vehicle still occupied by Dale. Additionally, the likelihood was strong that flight of this proportion was to avoid detection for some criminal act more serious than a mere traffic violation, and that likelihood could readily have been applicable to either occupant.

In the totality of these circumstances, we hold that there was an objectively reasonable basis to order Dale to exit and to pat him down (1) for safety, and (2) incident to detention or arrest for possible complicity in the vehicular assault. *See State v. Valentine*, 134 *N.J.* 536, 551, 636 *A.*2d 505 (1994). That the police elected to forego the latter basis for arrest upon detection of a weapon does not alter the analysis.

The order of suppression is reversed. We remand for further proceedings consistent herewith.