282 N.J. Super. 111 (1995)
659 A.2d 527
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWRENCE WALKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 1, 1995.
Decided June 19, 1995.
*112 Before Judges SHEBELL, SKILLMAN and KLEINER.
Susan Reisner, Public Defender, attorney for appellant (John H. Norton, Designated Counsel, of counsel and on the brief).
Clifford J. Minor, Essex County Prosecutor, attorney for respondent (Elizabeth Miller-Hall, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted for possession of cocaine, in violation of N.J.S.A. 2C:35-10(a)(1), and second degree possession of cocaine with the intent to distribute, in violation of N.J.S.A. 2C:35-5(b). The trial court denied defendant's motion to suppress. A jury subsequently found defendant guilty of both charges. The court merged defendant's conviction for possession of cocaine into his conviction for possession with the intent to distribute and sentenced him to an indeterminate term at the Youth Correction Complex. The court also imposed a $2,000 DEDR penalty, a $50 *113 lab fee and a $30 VCCB penalty and suspended defendant's driver's license for eighteen months.
On appeal, defendant makes the following arguments:
I. THE TROOPER LACKED A LEGAL BASIS TO ORDER BOTH OCCUPANTS OUT OF THE VEHICLE AND OBTAIN CONSENT TO SEARCH THE VEHICLE.
II. THE TROOPER LACKED A LEGAL BASIS TO SEARCH THE PERSON OF THE DEFENDANT.
III. THE PAT DOWN OF THE DEFENDANT EXTENDED BEYOND A CHECK FOR WEAPONS AND WAS THEREFORE ILLEGAL.
We conclude that the patdown search of defendant which revealed the cocaine on which his conviction is based violated the Fourth Amendment. Therefore, we reverse.
Defendant was a passenger in a motor vehicle being operated on the New Jersey Turnpike near Newark Airport in the late afternoon on September 3, 1991. A state trooper stopped the driver for failing to use his directional signal and tailgating another vehicle. According to the trooper, the driver appeared nervous, spoke very quickly, stuttered, and failed to make eye contact. Moreover, in response to the trooper's inquiry, the driver said that he was coming from Newark Airport. This response increased the trooper's suspicion because the location of the stop was north of where persons ordinarily would enter the turnpike to travel in a southerly direction. The trooper's suspicions were increased further when the driver and defendant gave conflicting answers as to the identity of the person they had dropped off at the airport. The trooper then obtained the driver's consent to search his vehicle, and around the same time he called the Newark station of the State Police to send a back-up trooper to assist him. At this point, the trooper ordered defendant to step out of the car and he conducted a patdown search for weapons. This search revealed a hard object near the ankle of defendant's right pants leg. The trooper retrieved this object, which turned out to be a piece of tinfoil wrapped around cocaine.
In Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968), the Court held that a police officer may conduct a *114 reasonable search for weapons upon a person he is investigating "where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Ibid. However, "[n]othing in Terry can be understood to allow a generalized `cursory search for weapons.'" Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238, 247 (1979).
Based on Terry and its progeny, our Supreme Court concluded in State v. Thomas, 110 N.J. 673, 542 A.2d 912 (1988) that a policeman's reasonable suspicion that a person possesses illegal drugs does not by itself provide a basis for a reasonable suspicion that that person is armed and dangerous. Rather, the record must provide "a specific and particularized basis for an objectively reasonable suspicion that defendant was armed and dangerous." Id. at 683, 542 A.2d 912.
More recently, the Court has held that "the standard that justifies an order to a passenger to step out of a vehicle does not rise to the Terry standard that must be met for a protective pat-down." State v. Smith, 134 N.J. 599, 618, 637 A.2d 158 (1994). "[T]o justify a pat-down of an occupant once alighted from a vehicle, specific, articulable facts must demonstrate that a `reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" Id. at 619, 637 A.2d 158 (quoting Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909). "A `hunch' forms an insufficient basis on which to conduct the uncomfortable and often embarrassing invasion of privacy that occurs in a pat-down of a person's body." Ibid. The Court also indicated that the factors a court should consider in determining the reasonableness of a police officer's belief that a suspect may be armed and dangerous include the time of day and the amount of traffic on the roadway. Ibid.; *115 see also State v. Otero, 245 N.J. Super. 83, 92-93, 584 A.2d 260 (App.Div. 1990).
We conclude that the police officer who stopped the vehicle in which defendant was riding did not have "a specific and particularized basis for an objectively reasonable suspicion that defendant was armed and dangerous." State v. Thomas, supra, 110 N.J. at 683, 542 A.2d 912. Although the driver's demeanor and the responses that the driver and defendant gave to the officer's questions may have created a reasonable suspicion that they were engaged in some form of wrongdoing, such as being in possession of illegal drugs, they did not provide a reasonable basis for a belief that defendant might be armed and dangerous. Compare State v. Dale, 271 N.J. Super. 334, 339, 638 A.2d 886 (App.Div. 1994). In explaining his reason for conducting a patdown search of defendant, the officer simply stated:
[F]or my own safety, being that I was  it was two on one, and also the fact that I felt something was wrong here, the fact that the  it might have been something amiss inside the vehicle and also due to my past experience with searching cars, for my own safety, I patted Mr. Walker down for weapons.
Similarly, on cross-examination, the officer indicated that he had a "generalized suspicion" that "something was amiss." Thus, the officer failed to identify any objective basis for a belief that defendant was armed and dangerous that would not exist any time a passenger in a car stopped for a motor vehicle violation is suspected of some form of unspecified unlawful conduct. Such generalized suspicion does not provide a reasonable basis for a belief that an individual is armed and dangerous, especially when the suspect is standing on the shoulder of the Turnpike in daylight during commuting hours.
Furthermore, the simple fact that the driver consented to a search of his vehicle did not give the trooper the right to frisk the passenger. Even in connection with the execution of a search warrant, which must be issued by an impartial magistrate upon a showing of probable cause, the Supreme Court has held that the police may not seek to control the site of the search by routinely conducting a patdown frisk for weapons of any person present on *116 the scene, because "[t]he `narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked." Ybarra v. Illinois, supra, 444 U.S. at 95, 100 S.Ct. at 343, 62 L.Ed.2d at 247. Similarly, in State v. Dolly, 255 N.J. Super. 278, 283, 605 A.2d 238 (App.Div. 1991), we stated:
A search or seizure must be supported by probable cause "particularized" with respect to that individual or vehicle. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person or car may happen to be.
Since the police may obtain consent for a search without probable cause or even reasonable suspicion, State v. Allen, 254 N.J. Super. 62, 66, 603 A.2d 71 (App.Div. 1992), it is even clearer in the present context than in a search warrant case that the authorization to search one person's property does not provide authorization to frisk another person absent "a specific and particularized basis for an objectively reasonable suspicion [that that person is] armed and dangerous." State v. Thomas, supra, 110 N.J. at 683, 542 A.2d 912; cf. State v. Suazo, 133 N.J. 315, 321, 627 A.2d 1074 (1993) ("[A] driver's apparent authority to consent to a search of the car does not include the authority to permit a search of the personal belongings of other passengers.").
Accordingly, the order denying defendant's motion to suppress and the judgment of conviction are reversed and the matter is remanded to the trial court.