**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0601-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALBERT J. NYEWAH, a/k/a
ALBERT NYEWAH, and
ALBERT W. NYEWAH,

    Defendant-Appellant.

_____

Submitted January 29, 2024 – Decided July 3, 2024

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 21-10-0714.

Joseph E. Krakora, Public Defender, attorney for appellant (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Albert Nyewah appeals from an order denying his motion to suppress evidence seized pursuant to a warrantless search. Following our review of the arguments and applicable law, we conclude the trial court erred in denying defendant's motion to suppress because the totality of the circumstances failed to establish a reasonable articulable suspicion for the investigatory detention. We reverse the order denying defendant's motion to suppress the evidence, vacate his guilty plea, and remand for new proceedings.

I.

We summarize the facts from the one-day suppression hearing record consisting of the testimony of Plainfield Detective Franklin Brito, the sole witness for the State. On July 17, 2021, Brito, Detective Marcelo Lopez, and Officer James Addison, were assigned to the Narcotics Vice unit and on patrol in Plainfield. At 9:57 p.m., the officers were approximately 100 feet from the intersection of Clinton Avenue and Clinton Place, a residential area and school zone. Brito described the neighborhood as "a high[-]crime, high[-]narcotic area, where drugs are sold at a street level" and frequented by "gang members" that "loiter[ed]" in the area based on his experience as a long-time Plainfield resident.

A-0601-22

Brito saw exhaust fumes coming from a gray Nissan Altima idling with the rear lights on. The Nissan was on Clinton Avenue approximately eight to ten inches from the curb and fifteen feet from the crosswalk on Clinton Place. The area was "poorly lit" due to drizzling rain and winds during a tornado watch.

Brito testified the officers decided to initiate a stop and issue a traffic summons for parking within twenty-five feet of a crosswalk, in violation of N.J.S.A. 39:4-138(e), because the Nissan could "obstruct the flow of traffic" and "impede the vision" of other drivers. He also decided to approach the Nissan to determine if it was occupied. As Brito drove the police vehicle toward the Nissan, he did not see anyone inside. He pulled up next to the Nissan on a slant with the front end of the police vehicle "inches" from the driver's door, leaving enough room for Lopez to exit the vehicle. The driver's window was "slightly" down, and Brito saw defendant fully reclined in the driver's seat, which also prompted a "welfare check." Brito claimed defendant sat up in a "fast manner" and looked "startled."

The officers exited the police vehicle and approached the Nissan. Lopez went to the driver's window and asked defendant to lower his window and to produce his driving credentials. According to Brito, defendant was "nervous" with a "trembling voice," "hands shaking as he gathered his documents,"

3

"fumbl[ed] his documents," and "avoided" moving the "lower extremities of his body" as he reached toward his glovebox. Based on his experience, Brito believed that "it [was] common practice for individuals concealing something in their waistband not to want to move in that area in order to expose that area." Nonetheless, defendant provided his credentials, confirming he was the registered owner of the Nissan.

At Brito's direction, Lopez ordered defendant to exit the Nissan. Again, relying on his training and experience, Brito stated "we wanted to pat [defendant] down because [he] strongly believed that [defendant] was in possession of weapons [or contraband.]" Defendant initially hesitated but complied after several commands were issued. According to Brito, defendant's hesitation further raised his suspicion that defendant possessed a weapon or contraband.

When defendant exited the Nissan, Lopez "took hold" of defendant. Brito testified Lopez followed their general procedure for conducting a pat down for weapons. Lopez "grabbed" defendant by the back of his shirt and his arm, disallowing defendant the "option to flee" while escorting him to an area to conduct the pat down search. Brito claimed defendant attempted to flee because he was "reluctant" to being grabbed and "forcefully" tried to remove Lopez's

4

hands, made a motion with both hands toward his waistband as if "adjusting something," and did a "double take" — looked behind his shoulder. Based on his knowledge and experience, Brito stated that individuals in possession of a weapon "subconsciously" and "abruptly attempt'" to move towards the area where a weapon is concealed.

Lopez placed defendant's right arm in an "arm bar" by placing defendant's hands behind his back and applying pressure to gain his compliance. Defendant then attempted to "forcibly" get away from Lopez and was struck in the face three times to gain his compliance before the other officers "immediately rushed" to Lopez's aid and "pinned" defendant to the Nissan.

Brito grabbed defendant's left arm and placed him in an arm bar. As the officers were struggling to place defendant in handcuffs, Brito heard a "clank" as "something" fell to the ground directly in front of where defendant was pinned to the Nissan. Brito "believed" that a weapon fell from defendant's waistband. Addison recovered a semi-automatic handgun when Brito was removed from in front of the Nissan.

Defendant was arrested for obstruction and possession of the handgun. In the search incident to arrest, Brito recovered twenty-two grams of cocaine in a clear sandwich bag from defendant's front pocket. Two tickets were issued to

5

defendant for parking within twenty-five feet of a crosswalk and possession of a controlled dangerous substance (CDS) in a motor vehicle. The encounter with defendant was not recorded because the police vehicle had no dashcam and body cameras had not been issued to the officers.

In October 2021, defendant was indicted for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count one); fourth-degree unlawful possession of a large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count two); third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (count three); second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2) (count four); third-degree possession of CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7(a) (count five); second-degree possession of a firearm while committing a CDS offense, N.J.S.A. 2C:39-4.1(a) (count six); and fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1 (count seven).

The State moved to admit the handgun and cocaine recovered from the search. Defendant opposed and cross-moved to suppress the evidence. Following an evidentiary hearing, on March 29, 2022, the trial court issued a written opinion and order, granting the State's motion and denying defendant's motion. The court credited Brito's testimony and explained that the totality of

6

the circumstances gave the officers probable cause to initiate a motor vehicle stop because the Nissan was improperly standing in violation of N.J.S.A. 39:4-138(e)(l), appeared to be unoccupied and idling on a city street, was within twenty-five feet of the crosswalk on Clinton Place, and the officers "had an obligation to inquire as to the location and/or health of the vehicle operator under the community caretaking doctrine."

The trial court also found defendant's behavior justified the officers in directing him to exit the Nissan to conduct a protective search, stating:

> Here, defendant's presentation was unusual. His movements were unnaturally slow. He was nervous. He fumbled with his documents. He was parked at approximately [10:00] p.m. in an area known for its illegal activities involving drugs, . . . guns[,] and violence. He was parked essentially lying down in the driver's position with the car running. He sprung up at the approach of the police. This led the officers to suspect the harboring of contraband or a weapon.

Lastly, the court found the handgun was properly seized under the plain view doctrine.

Pursuant to a negotiated plea agreement, on June 28, 2022, defendant pleaded guilty to second-degree unlawful possession of a handgun. On September 30, 2022, defendant was sentenced in accordance with the plea

agreement to a four-year prison term with one year of parole ineligibility. The remaining charges and related motor vehicle offenses were dismissed.

## II.

Defendant appeals, arguing that the police officers lacked a reasonable and articulable suspicion that defendant was armed and dangerous to justify the pat-down search and seizure for evidence. We are persuaded by defendant's argument.

We apply our familiar deferential standard of review. State v. Nyema, 249 N.J. 509, 526 (2022). "'[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record.'" State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). In contrast, the trial court's interpretation of the law and the legal "'consequences that flow from established facts'" are reviewed de novo. Ibid. (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)); State v. Tiwana, 256 N.J. 33, 40 (2023).

The United States and New Jersey Constitutions guarantee that individuals shall be free from "unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Generally, a warrantless search or seizure is

invalid absent a showing that it 'falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Alessi, 240 N.J. 501, 517 (2020) (quoting State v. Mann, 203 N.J. 328, 337-38 (2010)).

We first address whether the police officers conducted a lawful stop of defendant's Nissan. "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Dunbar, 229 N.J. 521, 532 (2017). "To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40, modified on other grounds, 174 N.J. 351 (2002)); see also State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) ("A motor vehic[le] violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act."). There is no dispute that the officers saw defendant's Nissan parked and idling fifteen feet from the crosswalk. Accordingly, there was a sufficient basis for the police officers to approach the Nissan because they observed the traffic violation; namely, parking within twenty-five feet of the crosswalk.

We, therefore, examine the investigatory stop and subsequent detention. An investigatory stop involves a relatively brief detention by police during which a person's movement is restricted. State v. Rosario, 229 N.J. 263, 272 (2017) (describing an investigative stop as a police encounter during which an objectively reasonable person would not feel free to leave). An investigatory stop or Terry[1] stop must be "'based on "specific and articulable facts which, taken together with rational inferences from those facts," give rise to a reasonable suspicion of criminal activity.'" Nyema, 249 N.J. at 527 (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)). An officer's "reasonable and particularized suspicion" should be "based on the totality of the circumstances." State v. Stovall, 170 N.J. 346, 356 (2002). In viewing the totality of the circumstances, the officer's experience and knowledge are factors considered by the court. State v. Pineiro, 181 N.J. 13, 22 (2004). Nevertheless, the State must show by a preponderance of the evidence that the particular facts objectively supported the officer's reasonable suspicion. Id. at 518; State v. De Lorenzo, 166 N.J. Super. 483, 488 (App. Div. 1979).

"If, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances 'give rise to suspicions unrelated to

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions.'" State v. Dickey, 152 N.J. 468, 479-80 (1998) (alteration in original) (quoting U.S. v. Johnson, 58 F.3d 356, 357-58 (8th Cir.), cert. denied, 516 U.S. 936 (1995)); see also State v. Baum, 199 N.J. 407, 424 (2009).

The officers' vehicle pulled up within inches of the driver's side door of the Nissan. No reasonably prudent person would have felt free to leave given the close proximity of the vehicle followed by Lopez's orders to produce the credentials. At that moment, defendant's interaction with the officers became an investigatory detention. Rosario, 229 N.J. at 272. Defendant complied and no other questions were asked by the officers. There was no testimony that defendant was injured, or under the influence of alcohol or drugs. At that point, Brito's "welfare check" was completed and the officers no longer had a reasonable suspicion to continue the investigatory stop.

Furthermore, when defendant was ordered out of the Nissan, the stop became an investigative detention. There was no testimony or evidence — or finding by the trial court — that defendant was, or was about to be, engaged in criminal activity before he was ordered out of the car. Pineiro, 181 N.J. at 22 (quoting Stovall, 170 N.J. at 356). Brito's "strong" belief that defendant possessed a weapon or contraband was based on a "raw, inchoate suspicion

11

grounded in speculation [which] cannot be the basis for a valid [detention]." State v. Scriven, 226 N.J. 20, 34 (2016).

More was required to justify the investigatory detention. Alessi, 240 N.J. at 518. Brito's testimony fell short of showing any reasonable belief that the officers faced a danger from this traffic stop. Defendant did not make any furtive movements as if he were concealing contraband or a weapon while seated in the Nissan.

Once out of the car, Brito's testimony that defendant's attempt to "flee" was inconsistent with his testimony that Lopez grabbed defendant's shirt and placed his arm in an arm bar, foreclosing any option to flee. The same is also true for Brito's generalized observation that defendant made a motion toward his waistband while his right arm was in the arm bar. Those facts, when viewed in the totality of the circumstances, did not implicate criminal activity and could not reasonably be considered an objective manifestation that defendant was armed and dangerous.

"Nervousness and excited movements are common responses to unanticipated encounters with police officers on the road." Rosario, 229 N.J. at 277. Therefore, those responses "cannot . . . support a detention in the first place [,]" let alone extending the detention. Ibid.; see also Nyema, 249 N.J. at 533

12

(finding that "nervous behavior or lack of eye contact with police cannot drive the reasonable suspicion analysis given the wide range of behavior exhibited by many different people for varying reasons while in the presence of police"); State v. Walker, 282 N.J. Super. 111 (App. Div. 1995) (finding nervousness, by itself, does not establish dangerousness); State v. Lund, 119 N.J. 35, 47 (1990) ("'[M]ere furtive gestures of an occupant of an automobile do not give rise to an articulable suspicion suggesting criminal activity.'" (quoting State v. Schlosser, 774 P.2d 1132, 1137 (Utah 1989))).

Having reviewed the record and applied the foregoing principles, we conclude the trial court erred in considering and analyzing the parties' arguments under the more stringent probable cause standard rather than the reasonable articulable suspicion standard in analyzing the investigatory stop and subsequent detention. The trial court's findings of facts that defendant's "presentation was unusual" with "unnaturally slow" movements, nervousness, and "fumbl[ing] with his documents" while parked in "an area known for its illegal activities involving drugs" were not sufficient to form a reasonable and articulable that defendant possessed a handgun or cocaine.

While we acknowledge the testimony that defendant's Nissan was parked in a high-crime area, we also consider this factor in the totality of the

13

circumstances in determining whether the detention was based on reasonable suspicion. Our Supreme Court "has held that '[j]ust because a location to which police officers are dispatched is a high-crime area does not mean that the residents in that area have lesser constitutional protection from random stops.'" State v. Goldsmith, 251 N.J. 384, 400 (2022) (alteration in original) (quoting State v. Chisum, 236 N.J. 530, 549 (2019); see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."); Pineiro, 181 N.J. at 31 (Albin, J., concurring)). Although "officers need not ignore the relevant characteristics of a neighborhood, . . . more is required to find reasonable suspicion." Goldsmith, 251 N.J. at 400-401 (citing Wardlow, 528 U.S. at 124). Brito's testimony provided no factual support for his conclusory statement based on his personal experience that Clinton Avenue and Clinton Place was a high-crime area. We, therefore, hold the officers' investigatory detention was unlawful, and the trial court erred in denying defendant's motion to suppress the handgun and cocaine.

In summary, there was no evidence showing of a reasonable articulable suspicion that defendant was armed when he was sitting in his car. Brito's

14

testimony and the facts found by the trial court show only a hunch. So, there was no lawful ground to order defendant out of his car and from that moment on the detention was unlawful. Accordingly, the subsequent discovery of the gun and cocaine were fruits from a poisonous tree and should have been suppressed.

Thus, we reverse the trial court's denial of defendant's motion to suppress evidence. We vacate the plea, and we remand this matter for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15